UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LUKE R. PUCKHABER,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

17-CV-576
DECISION AND ORDER

On June 26, 2017, the plaintiff, Luke R. Puckhaber, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On May 2, 2018, Puckhaber moved for judgment on the pleadings, Docket Item 15, and on August 1, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 21. On August 24, 2018, Puckhaber replied. Docket Item 24.

For the reasons stated below, this Court grants Puckhaber's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I. PROCEDURAL HISTORY

On November 8, 2013, Puckhaber applied for Disability Insurance Benefits and Supplemental Security Income. Tr. 180, 187. He claimed that he had been disabled

since January 1, 2013, due to bipolar disorder and a learning disability   Tr. 180, 187, 253.[1]

On January 3, 2014, Puckhaber received notice that his application was denied because he was not disabled under the Act.  Tr. 119-24.  He requested a hearing before an administrative law judge ("ALJ"), Tr. 127-18, which was held on February 26, 2016, Tr. 65.  The ALJ then issued a decision on March 9, 2016, confirming the finding that Puckhaber was not disabled.  Tr. 59.  Puckhaber appealed the ALJ's decision, but his appeal was denied, and the decision then became final.  Tr. 1-4.

## II.    THE ALJ'S DECISION

In denying Puckhaber's application, the ALJ evaluated Puckhaber's claim under the Social Security Administration's five-step evaluation process for disability determinations.  *See* 20 C.F.R. § 404.1520.  At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment.  § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three.  § 404.1520(a)(4).

---

[1] In late 2010, Puckhaber applied for Supplemental Security Income benefits and Disability Insurance Benefits.  Tr. 166, 173.  He claimed that he had been disabled since June 1, 2010.  Tr. 166, 173.  Those claims were denied on February 15, 2011.  Tr. 113.  Puckhaber did not appeal that denial.  Tr. 305.

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Puckhaber had not engaged in "substantial gainful activity" since January 1, 2013, the alleged onset date. Tr. 52. At

step two, the ALJ found that Puckhaber's bipolar disorder was a "severe impairment." Tr. 53. At step three, the ALJ determined that Puckhaber did not have an impairment or combination of impairments that meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

> In assessing Puckhaber's RFC, the ALJ determined that Puckhaber could
>
> perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to unskilled work which is simple, routine and low stress, defined as having only occasional decision making, changes in work setting, or interaction with co-workers and no interaction with the public.

Tr. 54. The ALJ based these findings on the opinions of Puckhaber's physicians and other available medical evidence. Tr. 54-57. He placed "great weight" on the findings of Gregory Fabiano, Ph.D, a consultative psychologist, who did not find Puckhaber to have a disabling condition. Tr. 55. The ALJ gave less weight to the opinions of Liz Haley, a licensed mental health counselor, and Meliton Tanhehco, M.D., a treating source psychiatrist. Tr. 57. Those sources found that Puckhaber's mental conditions were disabling, but the ALJ discounted them because they were "internally inconsistent" and "not supported by the record as a whole," and because their opinions were in the form of "check-box" assessments. Tr. 57.

At step four, the ALJ determined that Puckhaber is unable to perform any past relevant work. Tr. 57. And at step five, the ALJ determined that considering Puckhaber's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [he] can perform." Tr. 58. Specifically, the ALJ determined that Puckhaber can work as a housekeeper, "[p]roduct assembler," or an electrical accessories assembler. Tr. 58-59.

4

## III. SUBSEQUENT PROCEDURAL HISTORY AND EVIDENCE

After the ALJ issued his decision, Puckhaber sent the Appeals Council twelve pages of additional medical records from the Dent Neurologic Institute and twenty-two pages of additional medical records from Erie County Medical Center. Tr. 2. The Appeals Council determined that the additional evidence did not relate to the period at issue, however, and therefore did not add anything to the decision about whether Puckhaber was disabled on or before March 9, 2016, the date of the ALJ's decision. *Id.*

On June 26, 2017, Puckhaber filed another application for Disability Insurance Benefits. Docket Item 15-2 at 7. In this application, he alleged a disability onset date of March 10, 2016, and claimed that he was disabled due to bipolar disorder, antisocial personality disorder, and anxiety disorder. *Id.* at 7, 11. This time, a disability adjudicator/examiner found Puckhaber to be disabled at the initial stage, *id.* at 38, relying on some of the same medical evidence that was before the ALJ in the instant proceeding. *See id.* at 29-30. Additionally, the same Dr. Fabiano who had examined Puckhaber in connection with his claim of disability in this case examined Puckhaber in connection with this later claim of disability. *Id.* at 33. Again, Dr. Fabiano determined that Puckhaber's impairments resulted in only "mild limitations." *Id.* But this time, the adjudicator determined that such "limitations [were] not consistent with the [medical evidence in the record], which indicates [that Puckhaber] needs a very structured setting, with 24/7 supervision in order to remain stable in the community." *Id.* According to the adjudicator, "[a]n increase in demands/stress may exacerbate [the claimant's] mental illness." *Id.*

Puckhaber objects to the ALJ's formulation of his RFC in this case. Docket Item 15-1 at 10. Specifically, Puckhaber argues that the ALJ failed to properly evaluate and

5

credit the opinion of Dr. Tanhehco. *Id.* at 10-18. Puckhaber also argues that the Commissioner erred in failing to properly evaluate the additional evidence he submitted after the ALJ's determination. *Id.* at 18-22. Finally, Puckhaber asks this Court to remand the case so that the Commissioner can consider his latest disability determination as new evidence under 42 U.S.C. § 405(g). *Id.* at 22- 27.

## **LEGAL STANDARDS**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

"The Social Security Act provides that a court may remand a case to the Secretary to consider additional evidence, 'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (quoting 42 U.S.C. § 405(g)). "An appellant must show that the proffered evidence is (1) 'new' and not merely cumulative of what is already in the record . . . and that it is (2) material, that is, both relevant to the claimant's condition during the time

6

period for which benefits were denied and probative." *Jones*, 949 F.2d at 60 (quoting *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988)). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide a claimant's application differently." *Id.* (quoting *Tirado*, 842 F.2d at 597). "Finally, a claimant must show (3) good cause for her failure to present the evidence earlier." *Id.* (quoting *Tirado*, 842 F.2d at 597).

## **DISCUSSION**

### I.    DUTY TO RECONTACT TREATING SOURCE DR. TANHEHCO

The Social Security Act provides that:

> In making any determination [with respect to whether an individual is under a disability] the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

42 U.S.C. § 423(d)(5)(B). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge at trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F. 3d 503, 508-09 (2d Cir. 2009)). "Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion in the case record, the adjudicator must make 'every reasonable effort' to

7

recontact the source for clarification of the reasons for the opinion." SSR 96-5p, 1996 WL 374183, at *6.[2]

Here, the ALJ found that Dr. Tanhehco was one of Puckhaber's treating sources. Tr. 56 ("Mental status findings from Meliton Tanhehco, M.D., a treating source, do not suggest highly restricted functioning."). Dr. Tanhehco signed off on a "mental impairment questionnaire" regarding Puckhaber. Tr. 57. According to the ALJ, the questionnaire indicated that Dr. Tanhehco was of the opinion that Puckhaber "has a 'marked' difficulty in maintaining social functioning and in his ability to maintain concentration, persistence, and pace, and that [Puckhaber] would be expected to decompensate with even a minimal increase in mental demands or change in environment." *Id.* But the ALJ discounted the questionnaire both because it was internally inconsistent[3] and because "the format of the form includes 'check-box' assessments," suggesting that the treating source's opinions were not sufficiently reliable. Tr. 57.

The ALJ also concluded that Dr. Tanhehco's opinions in the questionnaire were insufficient because "[n]o supporting evidence such as evaluations or progress notes [were] provided with the aforementioned assessment that would serve to clarify the assessed limitations." But "if the ALJ needed such an assessment to appreciate the

---

[2] "Social Security Rulings . . . are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

[3] The ALJ found that the questionnaire also suggested that Puckhaber's "global functioning was noted to have remained [at a level indicating] psychiatric stability over an extended period, and the presence of no more than a moderate functional impairment." Tr. 57.

8

conclusions of the treating [souce], then he should have recontacted [Dr. Tanhehco] to inquire whether [he] could provide that information." *Deck v. Comm'r of Soc. Sec. Admin.*, 2018 WL 6111773, at *6 (W.D.N.Y. Nov. 21, 2018); *see Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record"); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sue sponte*"); *Hall v. Astrue*, 677 F. Supp. 2d 617, 626 (W.D.N.Y. Dec. 20, 1996) (quoting *Stevens v. Comm'r of Soc. Sec. Admin.*, 2008 WL 5057029, *5 (N.D.N.Y. Nov. 24, 2008)) ("An ALJ is required to recontact a treating physician in order to clarify the physician's opinion, when the opinion 'contains a conflict or ambiguity that must be resolved.'").

In other words, the ALJ should not have discounted Dr. Tanhehco's treating source opinion that Puckhaber had serious impairments stemming from his mental health without inquiring why he held that opinion and requesting the evaluations and progress notes that the ALJ believed were lacking. Likewise, if the ALJ had concerns about whether the boxes checked on a form adequately addressed the findings indicated by the checked boxes, it was incumbent on the ALJ to inquire further and not simply to dismiss the "check-box" findings. There is no indication that the ALJ made any such effort here. For that reason, the case is remanded to allow the ALJ to develop the record as needed and then reweigh the evidence.

## II. SUBSEQUENT DISABILITY DETERMINATION

Puckhaber argues that this Court should remand the proceeding in light of new and material evidence under 42 U.S.C. § 405(g). Docket Item 15-1 at 22-27. Specifically, he argues that the Commissioner should consider the subsequent determination of disability as evidence that Puckhaber was disabled during the time period of the instant claim. *Id.* This Court agrees, and that is a second, independent reason for remand.

Puckhaber's proffered evidence consists of a subsequent fully favorable decision, in which an adjudicator, *at the initial stage*, determined that Puckhaber was disabled shortly after the ALJ in this case reached the opposite conclusion. Docket Item 15-2 at 38. Courts in this district and others have found that when a subsequent favorable decision refers to evidence relevant to an earlier case, the subsequent decision is new material evidence that satisfies the three-part showing required for remand to consider new evidence. *See, e.g.*, *Banas v. Colvin*, No 13-cv-1066, slip op. at 9-10 (W.D.N.Y. Aug. 11, 2016); *Clemons v. Astrue*, 2013 WL 4542730, at *6 (W.D.N.Y. Aug. 27, 2013); *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 503-05 (S.D.N.Y. 2008); *Reyes v. Apfel*, 2000 WL 709087, at *8-*9 (S.D.N.Y. 2000). Here, it appears that the subsequent determination of disability actually relied on evidence from the time-period associated with Puckhaber's disability claim in this case. *See* Docket Item 15-2 at 29-30. Indeed, in the new decision, the adjudicator relied on Puckhaber's history of "psychiatric hospitalizations . . . going back to 2008." *Id.* at 32. In any event, "the mere fact that . . . new evidence postdates the ALJ's decision is insufficient to determine that it is irrelevant." *Catoe v. Berryhill*, 2019 WL 483319, at *8 n.11 (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989).

The Commissioner cites *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015), and notes that "a subsequent favorable decision that 'rests on specific findings that [the claimant's] condition grew worse' after the prior decision does not constitute new and material evidence." Docket Item 21-1 at 29 (quoting *Rivera*). But unlike *Rivera*, the subsequent opinion here does not make any "specific finding[]" that Puckhaber's condition "grew worse" after the ALJ's decision in March 2016. *See id.* One might infer from Puckhaber's hospitalizations that his condition grew worse, and Puckhaber "concedes" that his condition worsened over time. Docket Item 24 at 8. But as Puckhaber correctly notes, "[t]hat does not mean that he was not disabled prior to the" subsequent onset date, and even more importantly, there is no reason to believe that Puckhaber's apparently worsening condition was the reason for the subsequent finding that he was disabled. *See* Docket Item 15-2 at 32-33. In fact, the evidence also might suggest that Puckhaber's mental impairments always had been as serious, but that Puckhaber had not been getting the help and treatment that he needed during the earlier period. Moreover, the fact that Dr. Fabiano's findings regarding Puckhaber's mental health were similar in both disability claim examinations may well mean that Puckhaber's condition had not gotten much—or any—worse.

On remand, then, the ALJ must consider the additional evidence relating to the subsequent determination of disability. In other words, the ALJ must determine whether, in light of the finding that Puckhaber was disabled as of March 10, 2016, he also must have been disabled from January 1, 2013, to March 9, 2016.

Puckhaber also argues that the Appeals Council erred by failing to consider the twelve pages of additional medical records from Dent Neurologic Institute and twenty-

11

two pages of additional medical records from Erie County Medical Center that he provided them after the ALJ's decision. Docket Item 15-1 at 18-22. "Because this Court has determined that remand is necessary to further develop the record and to consider [the subsequent disability determination,] the ALJ should [also] consider this new evidence in the first instance on remand." *Catoe*, 2019 WL 483319, at *8.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 21, is DENIED, and Puckhaber's motion for judgment on the pleadings, Docket Item 15, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   March 21, 2019
         Buffalo, New York

                                            *s/ Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE